1

2

3

4

5                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON
6

7    UNITED STATES OF AMERICA ex rel.        No.  4:14-CV-5002-EFS
     SALINA SAVAGE, SAVAGE LOGISTICS,

8                          Plaintiff,        **ORDER TAKING JUDICIAL NOTICE OF
                                             CERTAIN DOCUMENTS, GRANTING IN
9             v.                             PART AND DENYING IN PART
                                             DEFENDANTS' MOTION TO DISMISS,
10   CH2M HILL PLATEAU REMEDIATION           AND DENYING RELATOR'S APPLICATION
     COMPANY, PHOENIX ENTERPRISES            FOR LEAVE TO CONDUCT DISCOVERY**
11   NORTHWEST (PENW), PHOENIX-ABC A
     JOINT VENTURE, ACQUISITION
12   BUSINESS CONSULTANTS, JONETTA
     EVERANO, JESSICA MORALES,
13   DOES 1-IX,

14                        Defendants.

15

16        Defendants seek dismissal of this False Claims Act (FCA) lawsuit

17   brought by Relator Salina Savage.[1]  Defendants argue dismissal of this

18   lawsuit is required because the Relator fails to satisfy the FCA's

19   first-to-file and original-source requirements and the Complaint fails

20   _____

21        [1]  A hearing occurred in the above-captioned matter on May 20, 2015.

22        Relator Salina Savage was present, represented by Bruce Babbit.

23        Marisa Bavand appeared on Defendant CH2M Hill Plateau Remediation

24        Company, LLC's behalf; Tyler Storti appeared on behalf of Defendants

         Phoenix Enterprises NW, LLC, Jonetta Everano, and Phoenix-ABC A

25        Joint Venture; and Shea Meehan appeared on behalf of Defendants

26        Acquisition Business Consultants and Jessica Morales.


ORDER - 1

to satisfy Federal Rule of Civil Procedure 9(b)'s standards for claims based on fraudulent conduct.  As set forth below, the Court finds the Complaint satisfies the FCA's first-to-file requirement, pleads sufficient facts to satisfy the original-source requirement and Rule 9(b) as to the business-entity Defendants, and fails to satisfy Rule 9(b) for the claims against Ms. Everano and Ms. Morales.  Accordingly, the Court grants in part and denies in part Defendants' motions to dismiss.  Finally, because the Court analyzes the FCA standing issues under Rule 12(b)(6), the Court denies the Relator's Application for Leave to Conduct Limited Jurisdictional Discovery.

**A.    Factual and Procedural Background**[2]

CH2M Hill Plateau Remediation Co. (CHPRC) is a prime contractor at the U.S. Department of Energy's Hanford Site.  In June 2008, CHPRC was awarded a $4,515,556,411 Plateau Remediation Contract to continue the environmental cleanup of portions of the Hanford Site.

To perform and receive payments for the Plateau Remediation Contract, CHRPC must certify and maintain compliance with various contract clauses, regulations, and statutes.  One of CHPRC's requirements under these governing provisions pertains to subcontracting work to woman-owned small businesses, HUBZone[3]

---

[2]  The "background" section is based on the Complaint's, ECF No. 1, factual allegations, which are assumed true at this time, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), as well as procedural litigation events.

[3]  In the Small Business Reauthorization Act of 1977, the United States established a program popularly referred to as HUBZone: Historically

ORDER – 2

businesses, and other disadvantaged businesses (collectively referred to as "small, disadvantaged businesses"). For instance, Federal Acquisition Regulations (FAR) require that a contractor make efforts to assure that small businesses have an equitable opportunity to compete for subcontracts. *See* FAR 52.219-9(d)(8).

Consistent with its statutory, regulatory, and contractual requirements to offer and attract subcontracts for small, disadvantaged businesses, CHPRC submitted in September 2007 its Small Business Subcontracting Plan to the Department of Energy (DOE) as required by the Plateau Remediation Contract, 15 U.S.C. § 637, and FAR 52.219-8 and 52.219-9. For fiscal years 2009-13, CHPRC's percentage goal for subcontracting to HUBZone businesses was 3.4% ($45,614,451), woman-owned small businesses was 6.5% ($88,513,870), and the total planned percentage goal for small, disadvantaged businesses was 7.9% ($106,956,283). If CHPRC subcontracted work to small, disadvantaged businesses, it avoided fee reductions under the terms of the Plateau Remediation Contract.

CHPRC did subcontract Plateau Remediation work to other businesses. A large business it subcontracted work to was FE&C. In order to appear to satisfy its subcontracting goals to small, disadvantaged businesses, while actually awarding contracts to FE&C, CHPRC initiated a scheme along with FE&C to create small businesses, which would merely serve as a small-business facade while FE&C performed

Underutilized Business Zone. The enacting regulations are 13 C.F.R. Part 126 *et seq.*

1   the subcontracted remediation work.  To carry out this scheme, CHPRC

2   reached out to Jonetta Everano, an FE&C employee, to ascertain whether

3   she was interested in starting a business which would apply for small-

4   business contracts for Plateau Remediation work.  Ms. Everano agreed to

5   establish a business named Phoenix Enterprises Northwest, LLC (PENW) in

6   February 2009.  Ms. Everano held a 51% ownership interest and served as

7   president of PENW, and FE&C held a 49% ownership interest in PENW.  On

8   May 12, 2009, PENW was added by CHPRC to its vendor database, Passport,

9   as a woman-owned, minority-owned small business.

10      In the spring of 2009, Washington Closure Hanford (WCH), another

11  Hanford prime contractor, which was awarded the River Corridor Closure

12  Contract by DOE, advertised a subcontract for small businesses: the

13  Truck and Pup S009166A00 subcontract (WCH IU 2&6 remediation

14  subcontract).   Relator Savage, who owns and operates a trucking

15  business—Savage Logistics, LLC—applied for the subcontract but did not

16  obtain it.  WCH awarded the subcontract to PENW.

17      Concerned that PENW was not a small business, Ms. Savage protested

18  PENW's status as a small business to the Small Business Administration

19  (SBA) under the WCH Truck and Pup Contract.  The SBA, which is the sole

20  federal agency with authority to determine whether a business concern

21  qualifies as a small, disadvantaged business, determined that PENW was

22  not a small business for purposes of the WCH Truck and Pup Contract

23  because it was affiliated with FE&C:  FE&C held 49% ownership interest

24  in PENW; PENW had no assets, employees, address, or telephone number;

25  and PENW shared office space and an insurance policy with FE&C.

26  Accordingly, any remediation work to be done by PENW was to be done by

ORDER – 4

FE&C staff.  The SBA issued a formal written decision finding that PENW was not a small business for the identified WCH procurement project.

In July 2009, Ms. Savage informed both CHPRC's Procurement manager and director that the SBA determined that PENW was not a small business but rather was FE&C's affiliate and provided a copy of the SBA's size determination letter to CHPRC.  Based on their verbal response, it was clear to Ms. Savage that these individuals at CHPRC already knew that PENW was not a small business.

In September 2009, CHPRC awarded PENW Contract Number 00039654—another small business contract—notwithstanding knowing that PENW was completely dependent on FE&C's manpower, bonding, insurance, and management and had been deemed not to be a small business for purposes of the WCH procurement project.

In July 2010, PENW formed a joint venture with Acquisition Business Consultants, Inc. (ABC), named Phoenix-ABC A Joint Venture ("Phoenix-ABC").  The purpose of this venture was to obtain federal contracts as a HUBZone contractor—a contractor who has 35% of its employees residing within any Indian reservation or area adjoining an Indian reservation. *See* 13 C.F.R. § 126.602.  ABC is an Alaska corporation owned by Jessica Morales, and was headquartered in Wasilla, Alaska from June 2008 until July 2012.  It did not have any employees in Alaska (a HUBZone area) or in Richland (a non-HUBZone area).  In July 2012, ABC changed its corporate address to Richland, Washington, and in July 2013, it changed its corporate address to Pasco, Washington.  Since 2009, Ms. Morales has worked as a Counselor for Procurement Technical Assistance Centers,

a federally chartered association whose counselors were described as experts in the field of small, disadvantaged business eligibility.

On August 3, 2010, CHPRC registered Phoenix-ABC as a HUBZone business in its Passport database. However, at that time, CHPRC knew that Phoenix-ABC could not qualify as a HUBZone business because neither member of Phoenix-ABC was a HUBZone certified contractor, as PENW was not a small, woman-owned business, and ABC was not a business established in a HUBZone area as it had no employees in Wasilla, Alaska.

Notwithstanding this knowledge, CHPRC awarded a number of HUBZone contracts to Phoenix-ABC beginning in August 2010 and continuing through March 2011. These awards furthered CHPRC's scheme of awarding small, disadvantaged business subcontracts to companies which merely served as a facade for FE&C. In total, CHPRC awarded contracts totaling $1,495,193.12 to Phoenix-ABC.

CHPRC then reported these PENW and Phoenix-ABC contracts as small business and HUBZone contracts to DOE in order to reach its subcontracting goals for small, disadvantaged businesses. In so doing, CHPRC knowingly failed to satisfy certification requirements, such as FAR 52.219-9(e)(4), which requires CHPRC to "[c]onfirm that a subcontractor representing itself as a HUBZone small business concern is identified as a certified HUBZone small business concern by accessing the Central Contractor Registration (CCR) database or by contacting SBA." CHPRC received full payment from DOE for "meeting" its Small Business Subcontracting Plan goals.

After uncovering similar conduct engaged in by another Hanford area prime contractor and largely the same subcontractors, Ms. Savage

brought a qui tam lawsuit (*Savage I*) in May 2010 against Washington Closure Hanford (WCH), PENW, FE&C, and individual employees of each company. *Savage I* alleges that the defendants engaged in a bid-rigging scheme in which WCH allegedly colluded with FE&C to recruit PENW to compete for the Truck and Pup contracts (and unspecified subcontracts) under the River Corridor Closure Contract (RCCC), No. DE-AC06-05RL 14655, at Hanford, and that WCH and PENW thereafter presented false claims for payment to the government. Approximately two years after filing *Savage I*, Ms. Savage amended the *Savage I* complaint to add facts pertaining to WCH's illegal awarding of contracts to PENW without publication. In September 2012, Ms. Savage amended the *Savage I* complaint again to add Phoenix-ABC, Sage Tec LLC, and Laura Shikashio as defendants and other allegations of false claims and false certifications relating to other small business contracts. In December 2013, the United States partially intervened in *Savage I* as to Defendants WCH, FE&C, Sage Tec, and Laura Shikashio. In January 2014, Relator Savage filed a Third Amended Complaint in *Savage I*.

While Ms. Savage was reviewing documents produced during the *Savage I* lawsuit, she became aware of Phoenix-ABC's failure to qualify as a HUBZone contractor. Ms. Savage filed this lawsuit (*Savage II*) in January 2014 against CHPRC, PENW, Phoenix-ABC, ABC, Ms. Everano, and Ms. Morales. ECF No. 1. Ms. Savage claims that CHPRC violated the FCA by 1) knowingly awarding contracts set aside for small and HUBZone businesses to businesses that were known not to be small or HUBZone businesses, 2) knowingly failing to verify that both joint venturers were certified HUBZone contractors before awarding over $1,495,193.12

of sole source HUBZone contracts to ABC-Phoenix, and 3) falsely reporting compliance with laws and regulations in order to receive payment from the United States. Relator Savage alleges that the other Defendants knowingly took advantage of CHPRC's desire to treat them as small and HUBZone certified businesses and agreed to collude with CHPRC by certifying themselves as small, disadvantaged businesses when applying for contracts set aside for such businesses, when they knowingly failed to satisfy such requirements, and then accepting the awarded contract and payments thereunder. The United States elected not to intervene in *Savage II*. Defendants then filed the instant motions to dismiss.

Following the hearing on the motions to dismiss in May 2015, the Court invited briefing on the U.S. Supreme Court's False Claims Act decision in *Brown v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015). ECF Nos. 61-65. Later the Relator filed an Application for Leave to Conduct Limited Jurisdictional Discovery, to which Defendants' responded. ECF Nos. 70, 73-75, & 79-81.

**B.  Dismissal Standards**

Defendants seek dismissal of this FCA lawsuit both under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). Defendants submit that their first-to-file and public-disclosure (original-source) arguments should be analyzed under Rule 12(b)(1) because these are jurisdictional questions, and the failure to satisfy Rule 9(b)'s particularity-pleading requirement should be analyzed under Ruler 12(b)(6).

The question of whether the Relator was the first to file a lawsuit pertaining to the alleged frauds against the government and whether she

based this lawsuit on matters for which she was the original source, i.e., on matters that were not publically disclosed, are questions that arise because of FCA statutory requirements, 31 U.S.C. § 3730(a)(5) (first-to-file requirement) and § 3730(e)4) (public-disclosure/original-source restriction). Accordingly, the Court is faced with a statutory standing question, which is to be analyzed at this stage of the proceeding under Rule 12(b)(6) (failure to state a claim), rather than Rule 12(b)(1) (lack of jurisdiction). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (recognizing that the lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) while the lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6)); *Vaughn v. Bay Envt'l Mgt., Inc.*, 567 F.3d 1021, 1024 (2009) (same). This seems clear to the Court but the question of what procedural analytical vehicle to apply to a defendant's first-to-file argument or a public-disclosure argument has not been specifically analyzed by the Ninth Circuit under the present statutory language following the Supreme Court's *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), decision, which encouraged courts to appropriately circumscribe jurisdictional findings.

In regards to the first-to-file requirement, § 3730(a)(5) states, "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(a)(5). This language "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh v. Y&H Corp.*, 546

1   U.S. 500, 515 (2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455

2   U.S. 385, 394 (1982)).  "The test speaks only to who may bring a private

3   action and when; it says nothing about the court's 'power' to consider

4   claims."  *United States ex rel. Heath v. AT&T*, 791 F.3d 112, 120 (D.C.

5   Cir. 2015) (quoting *United States v. Kwai Fun Wong*, 135 S. Ct. 1632

6   (2015)).

7        The Court is cognizant that the Ninth Circuit in *United States ex*

8   *rel. Hartpence v. Kinetic Concepts, Inc.* stated, "We treat the first-

9   to-file bar as jurisdictional;" 792 F.3d 1121, 1123 n.1 (9th Cir. 2015).

10  However, there was no question raised by the parties in *Hartpence* as to

11  whether the first-to-file bar should be analyzed under Rule 12(b)(1) or

12  12(b)(6), and no discussion by the Ninth Circuit on this point.  As the

13  District of Columbia Circuit recently recognized, many courts have

14  treated the first-to-file rule as jurisdictional without analyzing the

15  issue.  *Heath*, 791 F.3d at 119.  Yet, the Supreme Court has "endeavored

16  in recent years to 'bring some discipline' to the use of the term

17  'jurisdictional.'"  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).  The

18  Court endeavors to so properly limit its analysis here by analyzing the

19  first-to-file bar under Rule 12(b)(6), and not Rule 12(b)(1).  *See*

20  *Heath*, 791 F.3d at 119-20.

21       The Court likewise conducts a Rule 12(b)(6) analysis for the

22  original-source requirement.  Analyzing the original-source requirement

23  under Rule 12(b)(6) is supported by the changed language to the FCA's

24  original-source/public-disclosure restriction by the Patient Protection

25  and Affordable Care Act (PPACA) of 2010.  Prior to 2010, the FCA stated:

26

> **No court shall have jurisdiction over an [FCA qui tam] action**
> . . . based upon the public disclosure of allegations or
> transactions in a criminal, civil, or administrative hearing,
> in a congressional, administrative, or Government Accounting
> Office report, hearing, audit or investigation, or from news
> media, unless the action is brought by the Attorney General
> or the person bringing the action is an original source of
> the information.

31 U.S.C. § 3730(e)(4)(A) (pre-2010 version) (emphasis added). In 2010,

the PPACA removed the specific reference to jurisdiction and adopted

the following language:

> **The Court shall dismiss an action or claim under this section**,
> unless opposed by the Government, if substantially the same
> allegations or transaction as alleged in the action or claim
> were publicly disclosed—
>> (i)   in a Federal criminal, civil, or administrative
>>        hearing in which the Government or its agent is a
>>        party;
>> (ii)  in a congressional, Government Accountability
>>        Office, or other Federal report, hearing, audit,
>>        or investigation; or
>> (iii) from the news media, unless the action is brought
>>        by the Attorney General or the person bringing
>>        the action is an original source of the
>>        information.

31 U.S.C. § 3730(e)(4)(A) (2010) (emphasis added). Because the 2010

version was in effect with the Complaint was filed, the Court utilizes

the 2010 version to determine which procedural dismissal vehicle to

apply, Rule 12(b)(1) (jurisdictional) or 12(b)(6) (failure to state a

claim).[4] *See also Hughes Aircraft Co. v. United States ex rel. Schumer*,

---

[4]   As discussed below, for purposes of defining "public disclosure"
and "original source" under the FCA, the Court applies the version
of the FCA in effect at the time the alleged fraudulent activity
occurred. *See Hartpence*, 792 F.3d at 1123 n.1 (finding that the
2010 amendments to the FCA did not apply to an action that was
pending at the time the statute was amended); *Bleodow v. Planned*

ORDER – 11

520 U.S. 939, 946 (1997) (recognizing that for purposes of determining a court's authority the current statutory version is utilized).

Although a handful of courts have held that current § 3730(e)(4)(A) still requires an analysis under Rule 12(b)(1) for lack of jurisdiction, the Court disagrees. *Cf. United States ex rel. Hoggett v. Univ. of Phoenix*, No. 2:10-cv-02478-MCE-KJ, 2014 WL 3689764 at *4-5 (E.D. Cal. July 24, 2014); *United States ex rel. Adams v. Wells Fargo Bank Nat'l Ass'n*, No. 2:11-cv-00535-RCJ-PAL, 2013 WL 6506732 at * 4 (D. Nev. Dec. 11, 2013) (applying the 2010 amendment and stating "the rule is a jurisdictional bar"). The jurisdictional language was clearly removed in 2010. *See Heath*, 791 F.3d at 120 ("[T]he first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim."); *United States ex rel. Fryberger v. Kiewit Pacific Co.*, No. 12-cv-02698-JST, 2013 WL 5770514 (N.D. Cal. Oct. 24, 2013) (listing cases finding that Congress's removal of the jurisdictional language causes the public-disclosure bar to not be jurisdictional). Therefore, while some courts have found that the switch of language to "shall dismiss an action or claim" still requires a jurisdictional analysis, the Court finds otherwise. This language does not present a subject-matter jurisdiction issue but rather a standing issue. Accordingly, the public-disclosure assessment is no longer an Article III analysis but

---

*Parenthood of the Great NW Inc.*, No. C11-192-MJP, 2013 WL 6631771 at *2 (W.D. Wash. Dec. 16. 2013) (citing *Hughes Aircraft Co*, 520 U.S. at 946).

rather a statutory standing analysis, which is reviewed under Rule 12(b)(6).

A Rule 12(b)(6) motion to dismiss for failure to state a claim questions whether the plaintiff's claims satisfy Rule 8(a)'s pleading standards. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is [plausibly] entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (setting forth the plausibility standard). Plausibility does not require a probability of success on the merits; instead it requires "more than a sheer possibility" of success on the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether the complaint contains a statement showing that the pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proven on the alleged facts. *Id.* at 663. When conducting this analysis, the court accepts the alleged factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff, and considers judicially noticeable documents and contracts referenced in the complaint, but the court may disregard factual allegations that are contradicted by matters properly subject to judicial notice or filed exhibits. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (identifying what documents a court can consider at the Rule 12(b)(6) stage).

**C.   Requests for Judicial Notice and Jurisdictional Discovery**

The Relator asks the Court to take judicial notice of a number of documents: 1) the three Justice Department press releases identified in the Declaration of Bruce Babbitt, ECF No. 42, and 2) Relator Savage's declaration, which was filed in opposition to WCH's motion for summary judgment in *Savage I*, CV-10-5051.   The Relator did not provide an ECF No. for the declaration in *Savage I.*   After reviewing the *Savage I* docket, the Court presumes that judicial notice of ECF No. 119 is sought. No response was filed to this motion for judicial notice.   In her Surreply, ECF No. 55, the Relator also requests that the Court take notice of the matters set out in her declaration filed in this lawsuit as well, ECF No. 56.   CHPRC opposes this request.   ECF No. 58.

Federal Rule of Evidence 201(b) permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Under this standard, the Court takes judicial notice of the documents, and the content provided therein, prepared by the Washington Secretary of State's Office or obtained from the Washington Secretary of State's website, ECF No. 56, Exs. 4-8.   The Court declines to take judicial notice of the facts contained in the other requested documents. For instance, while the Court can take judicial notice of the fact that the Department of Justice issued the three press releases, ECF No. 42 Exs. 1-3, the facts contained in the notices could be reasonably

1   disputed.    The other documents, and facts contained therein, suffer the

2   same reasonable-dispute potential.

3        Accordingly, the Court considers the motions to dismiss while

4   adopting the facts alleged in the Complaint and the *Savage I* complaint

5   and considering the judicially noticed Secretary of State documents.

6        Following the hearing on the motions, the Relator filed an

7   Application for Leave to Conduct Limited Jurisdictional Discovery.    ECF

8   No. 70.   The Relator seeks leave to conduct discovery to determine

9   whether she was the first to file claims based on the fraud alleged in

10  this *Savage II* Complaint and that her information as based on personal

11  knowledge and not publically disclosed information.    Because the Court

12  has determined that the first-to-file and original-source requirements

13  are statutory standing requirements, and therefore properly analyzed

14  under Rule 12(b)(6), which requires the Court to focus on the

15  allegations contained in the Complaint, the Court finds jurisdictional

16  discovery by the Relator on these points is unnecessary.    The Relator's

17  motion to conduct jurisdictional discovery is denied.

18  **D.    Analysis**

19       Each of the Defendants ask the Court to dismiss the Complaint with

20  prejudice because 1) of the FCA's first-to-file statutory requirement,

21  2) of the FCA's original-source requirement, and 3) it fails to satisfy

22  Federal Rule of Civil Procedure 9(b)'s pleading requirements.[5]    The

23  Court addresses each in turn.

24  _____

25  [5]  The CHPRC Defendants and the Phoenix Defendants asserted all three

26      of these grounds in their motion.    The ABC Defendants focused on

ORDER – 15

1    1.    <u>FCA's First-to-File Requirement</u>

2    The FCA allows a private individual, such as Relator Savage to

3    bring a qui tam civil suit on the government's behalf.    31 U.S.C. §

4    3730(b)(1).    The FCA places a first-to-file restriction on this

5    allowance: "[w]hen a person brings an action under this subsection, no

6    person other than the Government may intervene or bring a related action

7    based on the facts underlying the pending action," 31 U.S.C. §

8    3730(b)(5).    The purpose of the first-to-file requirement is to "promote

9    incentives for whistle-blowing insiders and prevent opportunistic

10   successive plaintiffs." *Lujan*, 243 F.3d at 1187.

11   When comparing a later-filed qui tam action with an earlier qui

12   tam action, the court must inquire as to whether the later qui tam

13   action alleges "the same material elements of fraud described in an

14   earlier suit, regardless of whether the allegations incorporate somewhat

15   different details." *Id.* at 1189. This material-facts test, not an

16   identical-facts test, is used by the court.    *U.S. ex rel. Hartpence*,

17   792 F.3d at 1130 (citing *Lujan*, 243 F.3d at 1188).

18   Because *Savage I* is a pending action, Defendants argue that *Savage*

19   *II* must be dismissed pursuant to this first-to-file requirement.    The

20   Relator contends that this lawsuit is not barred because it is not based

21   on the same material facts underlying *Savage I*, i.e., the two actions

22   involve different prime contractors, WCH (*Savage I*) and CHPRC (*Savage*

23   *II*), operating under different DOE contracts.    As explained below, the

24   _____

25   the Rule 9(b) basis in their motion and at oral argument joined the

26   other Defendants' two other grounds for dismissal.

ORDER – 16

1    Court agrees that *Savage I* and *Savage II* are not related actions based

2    on the same material facts of fraud.

3        Prior to *Brown v. United States ex rel. Carter*, 135 S. Ct. 1970

4    (2015), case law suggested that, when applying the material-facts test,

5    the court should assess whether the first lawsuit equipped the

6    government with sufficient notice of the need to investigate the fraud

7    alleged in the later lawsuit and if the first lawsuit did provide

8    sufficient notice of the need to investigate the later fraud, then the

9    court should consider the later suit a related action. *Lujan*, 243 F.3d

10   at 1189 (quoting *United States ex rel. LaCorte v. Smith Kline Beecham*

11   *Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998) ("[O]nce the

12   government knows the essential facts of the fraudulent scheme, it has

13   enough information to discover related fraud.")); *United States ex rel.*

14   *Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011).  The Supreme

15   Court's ruling in *Brown* inherently limits this "notice" analysis.

16   Applying a broad "notice" test does not serve the FCA's purpose of

17   providing private parties the opportunity to pursue actions alleging

18   fraud against the government once the first-to-file bar lifts following

19   the dismissal of the earlier action.  Accordingly, even though *Savage*

20   *I* may have notified the U.S. government of the need to ensure that all

21   prime contractors at Hanford were correctly claiming their small,

22   disadvantaged business credits and that subcontractors claiming small,

23   disadvantaged business status met such status requirements, the Court

24   finds *Savage I* and *Savage II* are not based on the same material elements

25   of fraud.

26

ORDER – 17

1    That *Savage I* and *Savage II* involve different DOE prime
2    contractors, who operate under different DOE Hanford-area remediation
3    contracts and perform different remediation work, are key different
4    material facts.  Although both *Savage* actions allege a similar
5    fraudulent scheme, i.e., a prime contractor colluded with FE&C to create
6    small, disadvantaged businesses to apply for subcontracts when the work
7    would be performed by FE&C thereby permitting the prime contractor to
8    certify compliance with its requirement that it subcontract a percentage
9    of work to small, disadvantaged businesses, the Relator will need to
10   produce materially different evidence in *Savage I* and *Savage II* to prove
11   the FCA claims in each of those lawsuits.
12        That CHPRC is a wholly-owned subsidiary of CH2M Hill Companies
13   Ltd., *see* ECF No. 11, and CH2M Hill Companies Ltd. has a 30 percent
14   interest in WCH, *see* CV-10-5051-EFS, ECF No. 26,[6] does not impact the
15   determination that the facts supporting *Savage I* and those supporting
16   *Savage II* are materially different.  Of import, in both of these cases
17   the Relator (or the United States for the intervened claims in *Savage*
18   *I*) will need to prove the particular prime contractor knowingly sought
19   payment for satisfying its small, disadvantaged business subcontracting
20   requirements, with knowledge that it would not have reached these
21   subcontracting goals without including the "facade" subcontracts in
22   those totals, and that the subcontractors agreed to serve as a "facade"
23   for purposes of the identified awarded subcontracts.  *See United States*

---

25   [6]  WCH is also owned by URS Corporation (40 percent ownership interest)
26        and Bechtel National, Inc. (30 percent ownership interest).

ORDER – 18

*ex rel. Hartpence*, 792 F.3d at 1131-32 (finding that the first-to-file bar did not bar all of the claims contained in the second complaint even though the complaints named the same defendants, arose out of the same time period, involved the billing practice for the same therapy code, and were drafted by the same counsel, because the claims were based on different material facts as the rules governing the use of the billing codes were disseminated at different times and in different publications); *Heath*, 791 F.3d at 122-23 (permitting the second-filed lawsuit because it alleged a materially distinct fraud scheme notwithstanding that both complaints addressed whether AT&T (or a subsidiary) engaged in affirmative pricing misrepresentation); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009) (permitting second relator lawsuit because it involved different wholly independent insurance companies with different processes and procedures in relation to resolving hurricane-related wind/water damage).  The alleged *Savage I* and *Savage II* frauds, although both related to the Hanford site and involve the same prime contractor and many of the same subcontractors, "exist completely independent of one another."  *United States ex rel. Hartpence*, 792 F.3d at 1131.

In summary, the allegations in the two actions differ more than in just the details — the allegations involve different essential facts regarding fraudulent schemes involving distinct prime contractors and distinct subcontracts at the Hanford site.  Accordingly, the Relator satisfies the first-to-file requirement.  Each of the Defendants' motions to dismiss is denied in this regard.

ORDER – 19

1          2.   Original-Source Requirement

2          As indicated above, the FCA limits qui tam lawsuits by requiring

3    the private plaintiff to be the original source of information if the

4    allegations were previously publicly disclosed.  The pertinent version

5    of the FCA, the public-disclosure restriction under 31 U.S.C. §

6    3730(e)(4)(A) and (B), was amended in 2010 during the course of the

7    alleged fraudulent scheme.[7]  The Court must apply the version of the

8    FCA in effect at the time of the alleged fraudulent conduct so that the

9    legal effect of the conduct is assessed under the statute in effect at

10   the time of the conduct.  *See Hughes Aircraft Co.*, 520 U.S. at 946.

11   Because the alleged occurrences spanned before and after 2010, when

12   3730(e)(4) was amended, the Court must apply the two different versions

13   of the statute.

14         The pre-2010 version of § 3730(e)(4) stated:

15         (A)  No court shall have jurisdiction over an action under
16              this section based upon the public disclosure of
                allegations or transactions in a criminal, civil, or
17              administrative hearing, in a congressional,
                administrative, or Government Accounting Office report,

18   ────────────────────

19         [7] The alleged small-business fraud pertaining to CHPRC and PENW

20   occurred in 2009 when PENW was established with the alleged purpose of

21   establishing a small-business façade and then continued through

22   September 2009 when CHPRC awarded PENW a small-business subcontract.

23   In regard to the HUBZone fraud allegation, pertinent conduct occurred

24   in July 2010 when Phoenix-ABC was created and continued through 2011 as

25   CHPRC awarded HUBZone contracts to Phoenix-ABC.

26

ORDER – 20

1      hearing, audit, or investigation, or from the news
       media, unless the action is brought by the Attorney
2      General or the person bringing the action is an original
       source of the information.
3      (B)  For purposes of this paragraph, "original source" means
            an individual who has direct and independent knowledge
4           of the information on which the allegations are based
            and has voluntarily provided the information to the
5           Government before filing an action under this section
            which is based on the information.
6
The 2010 version, which became effective July 22, 2010, states:
7
8      (A)  The court shall dismiss an action or claim under this
            section, unless opposed by the Government, if
            substantially the same allegations or transactions as
9           alleged in the action or claim were publicly disclosed-
            (i)  in a Federal criminal, civil, or administrative
10               hearing in which the Government or its agent is a
                 party;
11          (ii)  in a congressional, Government Accountability
                  Office, or other Federal report, hearing, audit,
12                or investigation; or
            (iii) from the news media, unless the action is brought
13                by the Attorney General or the person bringing the
                  action is an original source of the information.
14     (B)  For purposes of this paragraph, "original source" means
            individual who either (i) prior to a public disclosure
15          under subsection (e)(4)(a), has voluntarily disclosed
            to the Government the information on which allegations
16          or transactions in a claim are based, or (2) [sic] who
            has knowledge that is independent of and materially adds
17          to the publicly disclosed allegations or transactions,
            and who has voluntarily provided the information to the
18          Government before filing an action under this section.

19     31 U.S.C. § 3730(e)(4).

20          The purpose of the FCA's public-disclosure and original-source

21     restrictions is to narrow qui tam actions to those situations where the

22     government has not had occasion to discover the fraud. *United States*

23     *ex rel. Findley v. F.P.C.-Boron Employees' Club*, 105 F.3d 675, 687 (D.C.

24     Cir. 1997) (quoting *United States ex rel. Springfield Terminal Ry. Co.*

25     *v. Quinn*, 14 F.3d 645, 647 (D.C. Cir. 1994)) ("[W]hen the publicly

26     disclosed transaction is sufficient to raise the inference of fraud,

there is 'little need for qui tam actions, which tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue."). A claim is "'based upon' public disclosure when it repeats allegations that have already been disclosed to the public." *U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009).

As the Court determined above, it is considering Defendants' original-source argument under Rule 12(b)(6), *i.e.*, whether the complaint adequately alleges facts to support the Relator's statutory standing under this provision of the FCA. The Complaint alleges, in pertinent part:

> 1.8 Relator Savage brings this action after voluntarily disclosing her knowledge and information to the United States as required by 31 U.S.C. § 3730(e)(4)(B), of [sic] all of which she has personal knowledge.
>
>         . . . .
>
> 2.3 Salina Savage has personal knowledge of the details of this scheme to submit false claims. In compliance with 31 U.S.C. section 3030(b)(2), Relator's [sic] Salina Savage is serving a copy of this complaint and substantially all of her material evidence and information to the United States government with this action.
>
> 2.4 Salina Savage is the original source of the information upon which this action is based. Salina Savage has voluntarily disclosed to the government, the Inspector General of the DOE the information on which the allegations and transactions in this complaint are based. Earlier, in connection with United States with cause number CV-10-5051-EFS, she provided information for her company as part of a May, [sic] 2009 size protest to the SBA that lead to the SBA's ruling that Jonetta Everano's company, PENW was not a small disadvantaged woman owned business.

ECF No. 1. The Court finds these allegations are sufficient under both statutory versions of the original-source restriction to survive these

1   dismissal motions.   Importantly, similar to the Court's first-to-file

2   determination above, the Court finds the allegations in *Savage II* are

3   not substantially the same allegations or transactions as alleged in

4   *Savage I*.    Therefore, that newspaper articles regarding *Savage I*

5   allegations were published prior to the filing of *Savage II* is not a

6   public disclosure of the *Savage II* allegations.    Likewise, that the

7   SBA determined PENW was not a woman-owned small business for purposes

8   of the WCH procurement project is not a public disclosure of the

9   allegations of collusion by PENW and CHPRC for purpose of the

10  subcontracts involved in *Savage II*.   Finally, that an individual could

11  access public databases and records to determine the ownership of each

12  business entity, the type of government contracts awarded to that

13  business entity, and the payments received by the contractor or

14  subcontractor, does not equate to a public disclosure of the allegations

15  in *Savage II*.    These separate pieces of information by themselves do

16  not serve as a public disclosure of an alleged scheme to defraud the

17  United States — the central basis for the Relator's FCA claims.

18  Accordingly, Defendants' motions to dismiss are denied in this regard.

19          3.   Federal Rule of Civil Procedure 9(b)

20          Lastly, Defendants argue that the Complaint fails to satisfy Rule

21  9(b)'s particularity requirement.   Rule 9(b) requires the complaint to

22  "state with particularity the circumstances constituting fraud or

23  mistake." Fed. R. Civ. P. 9(b).   To satisfy this standard, the Relator's

24  fraud-based FCA claims must "be specific enough to give defendants

25  notice of the particular misconduct so that they can defend against the

26  charge and not just deny that they have done anything wrong." *Vess v.*

*CibaGeigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id*. (quotation and citation omitted). A party may, however, plead allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind more generally." Fed. R. Civ. P. 9(b).

A defendant is liable under the FCA if it: "knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3739(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id*. § 3739(a)(1)(B). A defendant acts knowingly if it has actual knowledge, deliberate ignorance of the statement, or reckless disregard as to the truth of the statement. *Id*. § 3729(b)(1). "Innocent mistakes, mere negligent misrepresentations and differences in interpretations" do not constitute knowingly false statements. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). The falsity requirement is satisfied if it is an "intentional, palpable lie." *Id*. A claim is "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property," presented to the United States or to a contractor, if the money or property is to be spent or used on the United States' behalf. 31 U.S.C. § 3729(b)(2). A false statement or course of conduct is material if it impacts the government's decision to pay out moneys to the claimant. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006).

Here, the Complaint alleges both express false certifications and implied false certifications were made by the Defendants.  An express false certification occurs when a defendant certifies compliance with a law, rule, or regulation as part of the process through which the claim for payment is submitted. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  An implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim. *Id.*  To prove a false certification, the relator is not required to "identify representative examples of false claims to support every allegation," rather "use of representative examples is simply one means of meeting the pleading obligation" to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998-99 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

The Court finds the Complaint's fraud-based FCA claims are pled with sufficient particularity as to put each of the business-entity Defendants on notice of the alleged fraud and their involvement in such fraudulent scheme.  The Complaint identifies the business entities, the pertinent prime contract on which implied false certifications were based, the subcontracts on which express and implied false certifications were based, and the fraudulent scheme by which these business entitles created small, disadvantaged business facades.

The Complaint alleges that CHPRC certified that it was in compliance with its small, disadvantaged business subcontracting requirements when it submitted invoices for payment without identifying that it failed to award sufficient subcontracts to small, disadvantaged businesses. The Complaint also alleges that each of the subcontractors failed to satisfy the claimed small, disadvantaged business status with full knowledge that the business failed to satisfy these requirements, *i.e.*, PENW knew it was not a woman-owned small business given that the work it performed was effectively completed by FE&C, and ABC knew it was not a HUBZone business because it did not have any employees in the Wasilla, Alaska HUBZone or another HUBZone. The Complaint alleges the business entities received monies from the United States under the various subcontracts with knowledge that they were receiving monies that were set aside for small disadvantaged businesses. These allegations are sufficient to satisfy Rule 9(b)'s particularity requirement and provide sufficient notice to the business-entity Defendants as to the alleged fraud.

The Complaint, however, fails to identify with sufficient particularity the fraudulent conduct engaged in by Ms. Morales and Ms. Everano. There are no facts alleged to hold Ms. Morales and Ms. Everano liable for the alleged false claims made by the respective businesses they owned in part. The facts do not identify Ms. Morales or Ms. Everano as the individual who certified the pertinent small, disadvantaged business status for a particular "facade" subcontractor or received the payment that was paid as a result of the material false certification.

The Relator has requested leave to amend if the Court finds the Complaint deficient in any regard. Because the Court finds the FCA allegations as to Ms. Morales and Ms. Everano deficient under Rule 9(b) and because these deficiencies could potentially be remedied by an amended complaint, the Court grants Relator leave to amend the Complaint to add facts to support FCA claims against Ms. Morales and Ms. Everano. If Relator chooses to do so, the amended complaint must be filed within **three weeks of this Order's entry.**

**E.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.    Acquisition Business Consultants and Ms. Morales' Motion to Dismiss, **ECF No. 23**, is **GRANTED IN PART (Ms. Morales) and DENIED IN PART (remainder).**

2.    CH2M Hill Plateau Remediation Co.'s Motion to Dismiss, **ECF No. 28**, is **DENIED.**

3.    Savage's Motion for Judicial Notice, **ECF No. 41**, is **DENIED.**

4.    Defendants Phoenix Enterprises NW, LLC, Phoenix-ABC A Joint Venture, and Ms. Everano's Motion to Dismiss, **ECF No. 45**, is **GRANTED IN PART (Ms. Everano) and DENIED IN PART (remainder).**

5.    The Relator's Surreply is **CONSTRUED** as a motion for judicial notice, and is **GRANTED IN PART** (Exs. 4-8) **and DENIED IN PART** (remainder).

6.    The Relator's Application for Leave to Conduct Limited Jurisdictional Discovery, **ECF No. 70**, is **DENIED.**

7.    If the Relator elects to file an amended complaint to remedy pleading deficiencies as to Ms. Everano and Ms. Morales, the

ORDER ~ 27

1       amended complaint must be filed within **three weeks of this**

2       **Order's entry.**

3    8.    The Clerk's Office is to set this matter for a scheduling

4       conference.

5    **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this

6  Order and provide copies to counsel.

7    **DATED** this 1st  day of October 2015.

8

9                          s/Edward F. Shea

                              EDWARD F. SHEA

10             Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Q:\EFS\Civil\2014\5002.dismiss.postBrown.lc1.docx

ORDER – 28