FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 03, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SALINA SAVAGE, SAVAGE LOGISTICS,<br><br>Plaintiffs,<br><br>v.<br><br>CH2M HILL PLATEU REMEDIATION COMPANY, PHOENIX ENTERPRISES NORTHWEST (PENW), PHOENIX-ABC A JOINT VENTURE, ACQUISTION BUSINESS CONSULTANTS, JONETTA EVERANO, JESSICA MORALES, DOES 1-TX,<br><br>Defendants. | No.   4:14-CV-5002-SMJ<br><br>**ORDER DENYING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT** |

Before the Court, with oral argument, are Defendants Jonetta Everano and Jessica Morales' Motions to Dismiss First Amended Complaint, ECF Nos. 88 and 90. Defendants argue that the Complaint fails to state a claim for which relief can be granted and fails to satisfy Federal Rules of Civil Procedure 9(b)'s standards for claims based on fraudulent conduct. Having reviewed the pleadings and the file in

ORDER **-** 1

this matter, and after hearing oral argument, the Court is fully informed and denies the motions.

A. Procedural Background

On October 1, 2015, this court denied the motions to dismiss by CH2M Hill Plateau Remediation Company, Phoenix Enterprises Northwest, Acquisition Business Consultants, and Phoenix-ABC A Joint Venture. The Court granted the motions to dismiss brought by Jonetta Everano and by Jessica Morales with leave to amend to provide additional facts necessary to hold them liable for false claims made by the respective businesses they owned in part. ECF 83. The Plaintiffs filed a First Amended Complaint on October 20, 2015. ECF No. 84. Jonetta Everano and Jessica Morales have each filed motion to dismiss the First Amended Complaint. ECF Nos. 88 and 90.

B. Factual Background[1]

CH2M Hill Plateau Remediation Co. (CHPRC) is a prime contractor at the U.S. Department of Energy's Hanford Site. In June 2008, CHPRC was awarded a $4,515,556,411 Plateau Remediation Contract to continue the environmental cleanup of portions of the Hanford Site. To perform and receive payments for the Plateau Remediation Contract, CHRPC must certify and maintain compliance with

---

[1] The "factual background" section is based on the Complaint's, ECF No. 1, and Amended Complaint's, ECF No. 84, factual allegations, which are assumed true at this time, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

ORDER **-** 2

various contract clauses, regulations, and statutes. One of CHPRC's requirements under these governing provisions pertains to subcontracting work to woman-owned small businesses, HUBZone[2] businesses, and other disadvantaged businesses (collectively referred to as "small, disadvantaged businesses"). Consistent with its statutory, regulatory, and contractual requirements to offer and attract subcontracts for small, disadvantaged businesses, CHPRC submitted in September 2007 its Small Business Subcontracting Plan to the Department of Energy (DOE) as required by the Plateau Remediation Contract, 15 U.S.C. § 637, and FAR 52.219-8 and 52.219-9. For fiscal years 2009-13, CHPRC's percentage goal for subcontracting to HUBZone businesses was 3.4% ($45,614,451), woman owned small businesses was 6.5% ($88,513,870), and the total planned percentage goal for small, disadvantaged businesses was 7.9% ($106,956,283). If CHPRC subcontracted work to small, disadvantaged businesses, it avoided fee reductions under the terms of the Plateau Remediation Contract.

CHPRC did subcontract Plateau Remediation work to other businesses. A large business it subcontracted work to was FE&C. In order to appear to satisfy its subcontracting goals to small, disadvantaged businesses, while actually awarding contracts to FE&C, CHPRC initiated a scheme along with FE&C to create small

---

[2] In the Small Business Reauthorization Act of 1977, the United States established a program popularly referred to as HUBZone: Historically Underutilized Business Zone. The enacting regulations are 13 C.F.R. Part 126 *et seq.*

ORDER **-** 3

businesses, which would merely serve as a small-business facade while FE&C performed the subcontracted remediation work. To carry out this scheme, CHPRC reached out to Jonetta Everano, an FE&C employee, to ascertain whether she was interested in starting a business which would apply for small business contracts for Plateau Remediation work. Ms. Everano agreed to establish a business named Phoenix Enterprises Northwest, LLC (PENW) in February 2009. Ms. Everano held a 51% ownership interest and served as president of PENW, and FE&C held a 49% ownership interest in PENW. On May 12, 2009, PENW was added by CHPRC to its vendor database, Passport, as a woman-owned, minority-owned small business.

In the spring of 2009, Washington Closure Hanford (WCH), another Hanford prime contractor, which was awarded the River Corridor Closure Contract by DOE, advertised a subcontract for small businesses: the Truck and Pup S009166A00 subcontract (WCH IU 2&6 remediation subcontract). Relator Savage, who owns and operates a trucking business—Savage Logistics, LLC—applied for the subcontract but did not obtain it. WCH awarded the subcontract to PENW. Concerned that PENW was not a small business, Ms. Savage protested PENW's status as a small business to the Small Business Administration (SBA) under the WCH Truck and Pup Contract. The SBA, which is the sole federal agency with authority to determine whether a business concern qualifies as a small, disadvantaged business, determined that PENW was not a small business for

ORDER - 4

purposes of the WCH Truck and Pup Contract because it was affiliated with FE&C: FE&C held 49% ownership interest in PENW; PENW had no assets, employees, address, or telephone number; and PENW shared office space and an insurance policy with FE&C. Accordingly, any remediation work to be done by PENW was to be done by FE&C staff. The SBA issued a formal written decision finding that PENW was not a small business for the identified WCH procurement project.

In July 2009, Ms. Savage informed both CHPRC's Procurement manager and director that the SBA determined that PENW was not a small business but rather was FE&C's affiliate and provided a copy of the SBA's size determination letter to CHPRC. Based on their verbal response, it was clear to Ms. Savage that these individuals at CHPRC already knew that PENW was not a small business.

In September 2009, CHPRC awarded PENW Contract Number 00039654—another small business contract—notwithstanding knowing that PENW was completely dependent on FE&C's manpower, bonding, insurance, and management and had been deemed not to be a small business for purposes of the WCH procurement project.

In July 2010, PENW formed a joint venture with Acquisition Business Consultants, Inc. (ABC), named Phoenix-ABC A Joint Venture ("Phoenix-ABC"). The purpose of this venture was to obtain federal contracts as a HUBZone contractor—a contractor who has 35% of its employees residing within any Indian

ORDER - 5

reservation or area adjoining an Indian reservation. *See* 13 C.F.R. § 126.602. ABC is an Alaska corporation owned by Jessica Morales, and was headquartered in Wasilla, Alaska from June 2008 until July 2012. It did not have any employees in Alaska (a HUBZone area) or in Richland (a non-HUBZone area). In July 2012, ABC changed its corporate address to Richland, Washington, and in July 2013, it changed its corporate address to Pasco, Washington. Since 2009, Ms. Morales has worked as a Counselor for Procurement Technical Assistance Centers, a federally chartered association whose counselors were described as experts in the field of small, disadvantaged business eligibility.

On August 3, 2010, CHPRC registered Phoenix-ABC as a HUBZone business in its Passport database. However, at that time, CHPRC knew that Phoenix-ABC could not qualify as a HUBZone business because neither member of Phoenix-ABC was a HUBZone certified contractor, as PENW was not a small, woman-owned business, and ABC was not a business established in a HUBZone area as it had no employees in Wasilla, Alaska. Notwithstanding this knowledge, CHPRC awarded a number of HUBZone contracts to Phoenix-ABC beginning in August 2010 and continuing through March 2011. These awards furthered CHPRC's scheme of awarding small, disadvantaged business subcontracts to companies which merely served as a facade for FE&C. In total, CHPRC awarded contracts totaling $1,495,193.12 to Phoenix-ABC.

CHPRC then reported these PENW and Phoenix-ABC contracts as small business and HUBZone contracts to DOE in order to reach its subcontracting goals for small, disadvantaged businesses. In so doing, CHPRC knowingly failed to satisfy certification requirements, such as FAR 52.219-9I(4), which requires CHPRC to "[c]onfirm that a subcontractor representing itself as a HUBZone small business concern is identified as a certified HUBZone small business concern by accessing the Central Contractor Registration (CCR) database or by contacting SBA." CHPRC received full payment from DOE for "meeting" its Small Business Subcontracting Plan goals.

After uncovering similar conduct engaged in by another Hanford area prime contractor and largely the same subcontractors, Ms. Savage brought a qui tam lawsuit (*Savage I*) in May 2010 against Washington Closure Hanford (WCH), PENW, FE&C, and individual employees of each company. *Savage I* alleges that the defendants engaged in a bid-rigging scheme in which WCH allegedly colluded with FE&C to recruit PENW to compete for the Truck and Pup contracts (and unspecified subcontracts) under the River Corridor Closure Contract (RCCC), No. DE-AC06-05RL 14655, at Hanford, and that WCH and PENW thereafter presented false claims for payment to the government. Approximately two years after filing *Savage I*, Ms. Savage amended the *Savage I* complaint to add facts pertaining to WCH's illegal awarding of contracts to PENW without publication. In September

ORDER - 7

2012, Ms. Savage amended the *Savage I* complaint again to add Phoenix-ABC, Sage Tec LLC, and Laura Shikashio as defendants and other allegations of false claims and false certifications relating to other small business contracts. In December 2013, the United States partially intervened in *Savage I* as to Defendants WCH, FE&C, Sage Tec, and Laura Shikashio. In January 2014, Relator Savage filed a Third Amended Complaint in *Savage I*.

While Ms. Savage was reviewing documents produced during the *Savage I* lawsuit, she became aware of Phoenix-ABC's failure to qualify as a HUBZone contractor. Ms. Savage filed this lawsuit (*Savage II*) in January 2014 against CHPRC, PENW, Phoenix-ABC, ABC, Ms. Everano, and Ms. Morales. ECF No. 1. Ms. Savage claims that CHPRC violated the FCA by 1) knowingly awarding contracts set aside for small and HUBZone businesses to businesses that were known not to be small or HUBZone businesses, 2) knowingly failing to verify that both joint venturers were certified HUBZone contractors before awarding over $1,495,193.12 of sole source HUBZone contracts to ABC-Phoenix, and 3) falsely reporting compliance with laws and regulations in order to receive payment from the United States. Relator Savage alleges that the other Defendants knowingly took advantage of CHPRC's desire to treat them as small and HUBZone certified businesses and agreed to collude with CHPRC by certifying themselves as small, disadvantaged businesses when applying for contracts set aside for such businesses,

when they knowingly failed to satisfy such requirements, and then accepting the awarded contract and payments thereunder. The United States elected not to intervene in *Savage II*.

C. <u>Dismissal Standards</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim questions whether the plaintiff's claims satisfy Rule 8(a)'s pleading standards. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is plausibly entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (setting forth the plausibility standard). Plausibility does not require a probability of success on the merits; instead it requires "more than a sheer possibility" of success on the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint contains a statement showing that the pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proven on the alleged facts. *Id.* at 663. When conducting this analysis, the court accepts the alleged factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Id.*

Defendants also argue that the complaints fail to satisfy Rule 9(b)'s particularity requirement. Rule 9(b) requires a complaint to "state with particularity

the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, the fraud-based claims must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. CibaGeigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (quotation and citation omitted). A party may, however, plead allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind more generally." Fed. R. Civ. P. 9(b).

A defendant is liable under the FCA if it: "knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3739(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3739(a)(1)(B). A defendant acts knowingly if it has actual knowledge, deliberate ignorance of the statement, or reckless disregard as to the truth of the statement. *Id.* § 3729(b)(1). "Innocent mistakes, mere negligent misrepresentations and differences in interpretations" do not constitute knowingly false statements. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). The falsity requirement is satisfied if it is an "intentional, palpable lie." *Id.* A claim is "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United

States has title to the money or property," presented to the United States or to a contractor, if the money or property is to be spent or used on the United States' behalf. 31 U.S.C. § 3729(b)(2). A false statement or course of conduct is material if it impacts the government's decision to pay out moneys to the claimant. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006).

Here, the Complaint alleges both express false certifications and implied false certifications were made by the Defendants. An express false certification occurs when a defendant certifies compliance with a law, rule, or regulation as part of the process through which the claim for payment is submitted. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). An implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim. *Id.* To prove a false certification, the relator is not required to "identify representative examples of false claims to support every allegation," rather "use of representative examples is simply one means of meeting the pleading obligation" to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998-99 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

ORDER **-** 11

D. <u>Analysis</u>

The Court finds the Amended Complaint's fraud-based FCA claims are plead with sufficient particularity as to put Defendant's Jonetta Everano and Jessica Morales on notice of the alleged fraud and their involvement in the fraudulent scheme.

    a. <u>Jonetta Everano</u>

The Amended Complaint alleges that Ms. Everano, as Manger of Phoenix-ABC, approved billings for HUBZone contracts and received personal financial benefit by reason of those fraudulent billings. The Complaint alleges that during the time that Phoenix-ABC was performing the CHPRC contracts, Ms. Everano signed representations and certifications claiming that Phoenix-ABC was a HUBZone Contractor when she knew this to be false. Further, it is alleges that her own staff at Phoenix-ABC showed her the applicable Federal Acquisition Regulations and SBA Regulations and informed her that Phoenix-ABC was not an eligible HUBZone entity, and after learning that Phoenix-ABC was not eligible for HUBZone awards, Ms. Everano continued to bill and collect money from the HUBZone contracts. Further the Amended Complaint alleges that as part of the application for mentor protégé agreement approval from the Department of Energy, Ms. Everano represented that Phoenix-ABC was a HUBZone qualified small business when she personally knew that it did not qualify. These allegations are sufficient to satisfy

ORDER - 12

Rule 9(b)'s particularity requirement. The allegations go to the time, place, and nature of the alleged fraudulent activities, and thus provides sufficient notion to the Defendant as to alleged fraud.

The Motion is denied.

### b. Jessica Morales

The Amended Complaint alleges that Acquisition Business Consultants ("ABC") is owned by Jessica Morales. It further alleges that the organization of Phoenix-ABC was at the suggestion of Jessica Morales, who held herself out to be an expert in regulations and who claimed to have contacts and influence with the ONWB for the DOE in Washington DC. The Amended Complaint alleges that from Ms. Morales's claimed expertise, she knew or was charged with knowledge that the Phoenix-ABC was not eligible to receive HUBZone contract awards. It is further alleged that at all material times Ms. Morales knew that ABC did not maintain a principal office in a HUBZone and was therefore not an eligible HUBZone business. The Amended Complaint alleges that as part of the application for mentor protégé agreement approval from the Department of Energy, Ms. Everano and Jessica Morales represented that Phoenix-ABC was a HUBZone qualified small business when she personally knew that it did not qualify. The new allegations in the Amended Complaint are plead with sufficient particularity because they are statements that go to the time, place, and nature of the alleged fraudulent activities.

Thus, they are sufficient to put defendant on notice of her alleged involvement in the fraudulent scheme.

The Motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Jonetta Everano's Motion to Dismiss First Amended Complaint, **ECF No. 90**, is **DENIED**.

2. Defendant Jessica Morales' Motion to Dismiss First Amended Complaint, **ECF No. 88**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 3rd day of February 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge