UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SALINA SAVAGE, qui tam as Relator; and SAVAGE LOGISTICS LLC, qui tam as Relator,<br><br>Plaintiffs,<br><br>v.<br><br>CH2M HILL PLATEAU REMEDIATION COMPANY; PHOENIX ENTERPRISES NORTHWEST LLC (PENW); PHOENIX-ABC A JOINT VENTURE; ACQUISITION BUSINESS CONSULTANTS; JONETTA EVERANO; JESSICA MORALES; DOES I–IX; INDIAN EYES LLC; and ROXIE SCHESCKE,<br><br>Defendants. | No. 4:14-cv-05002-SMJ<br><br>**ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

Relators Salina Savage and Savage Logistics LLC bring this *qui tam* action[1] on behalf of the United States of America to prosecute alleged violations of the

---

[1] "A *qui tam* action is one in which a private party (the relator) brings a lawsuit on behalf of the United States government alleging fraud in return for a portion of any damages awarded." *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 700 (9th Cir. 2017) (citing 31 U.S.C. § 3730(b)).

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 1

False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B), and (G). ECF No. 206. Relators' Third Amended Complaint alleges that, in claims for payment submitted to the U.S. Department of Energy, and in records and statements material to those claims, Defendants Indian Eyes LLC and Roxie Schescke[2] fraudulently misrepresented the entity's status as a Historically Underutilized Business Zone ("HUBZone") small business. *Id.* Before the Court is those Defendants' motion to dismiss the Third Amended Complaint's allegations against them, ECF No. 208. They argue the Court must dismiss Relators' complaint because it fails to state a claim upon which relief can be granted and fails to state with particularity the circumstances constituting fraud. *Id.* Because oral argument is unnecessary, the Court decides the motion without it. *See* LCivR 7(i)(3)(B)(iii). Having reviewed the file in this matter, the Court is fully informed and denies the motion.

## BACKGROUND[3]

The Third Amended Complaint alleges the following facts. On June 19, 2008, the energy department awarded Defendant CH2M Plateau Remediation Company ("CH2M") a contract to continue environmental cleanup at the Hanford Site. ECF No. 206 at 3–4. As a condition of being awarded the contract, CH2M established

---

[2] Schescke owns and controls Indian Eyes. ECF No. 206 at 11.

[3] The parties have presented matters outside the pleadings. Because those matters are unnecessary to decide the motion, the Court excludes them from its consideration and instead confines its analysis to the Third Amended Complaint. *See* Fed. R. Civ. P. 12(d).

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 2

and implemented a Small Business Subcontracting Plan, which set goals for various subcontracting programs, including HUBZone small businesses. *Id.* at 23. The contract incorporated the subcontracting plan by reference and required CH2M to implement it, use good faith efforts to meet its goals, and regularly report HUBZone small business participation to the energy department. *Id.*

The subcontracting plan required CH2M to verify the HUBZone status of its subcontractors. *Id.* at 41–42. If CH2M had objected to this covenant, the energy department would not have awarded it the contract. *Id.* The subcontracting plan "require[d] each prospective contractor to submit a Representation and Certification form denoting their business size, classification, and status [as HUBZone or some other designation]." *Id.* at 53. Additionally, the subcontracting plan "must contain assurances that each offeror or bidder will submit period[ic] reports in order to determine the extent of compliance by the offeror or bidder with the subcontracting plan." *Id.* at 41–43; *see also id.* at 18.

By statute, "a prime contractor's representation that it is in compliance, and will remain in compliance with its small business subcontracting plan, [is] a material condition of award and continuing performance." *Id.* at 18. Thus, by statute, CH2M's failure to carry out the subcontracting plan would constitute a material breach of the contract and could result in financial penalties, including nonpayment under the contract. *Id.* at 24, 50, 55.

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 3

After the energy department awarded it the contract, CH2M subcontracted with Indian Eyes to provide certain equipment. *Id.* at 44–45. Indian Eyes is a limited liability company that Schescke owns and controls from Richland, Washington. *Id.* at 11. But Indian Eyes is "merely a Pass Through" entity for CH2M. *Id.* at 45. Indian Eyes did not own the equipment it subcontracted to provide. *Id.* at 44–45. So Indian Eyes rented the equipment and passed it through to CH2M so it could claim credit for subcontracting with a HUBZone small business. *Id.* And contrary to regulatory and contractual requirements, Indian Eyes performed less than fifteen percent of the work under the subcontract. *Id.*

On September 22, 2009, the U.S. Small Business Administration decertified Indian Eyes' HUBZone status. *Id.* at 43, 48. But CH2M knowingly misrepresented Indian Eyes' HUBZone status to the energy department. *Id.* at 4.

Specifically, in Revision 1 to the subcontracting plan (effective December 30, 2010 to December 27, 2012), CH2M fraudulently concealed the decertification and affirmatively represented to the energy department that Indian Eyes was a HUBZone subcontractor providing rental equipment and miscellaneous support. *Id.* at 43–44, 48. In subsequent reporting to the energy department, CH2M continued to claim that Indian Eyes was a HUBZone entity despite knowing it had been decertified. *Id.* at 43, 48.

Then, in Revision 2 to the subcontracting plan (effective December 28, 2012

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 4

to October 28, 2013), CH2M reported to the energy department that Indian Eyes was no longer a HUBZone entity but still provided services. *Id.* at 43–44, 48. Elsewhere in Revision 2, CH2M represented to the energy department that "several local companies previously identified as HUBZone suppliers have recently lost the HUBZone status due to information published in the 2010 Census." *Id.* at 44. This same representation appears in Revision 3 to the subcontracting plan (effective October 29, 2013 to December 29, 2014). *Id.*

In this process, Indian Eyes "knowingly misrepresented itself as a HUBZone contractor when it knew that it was not; and knowingly claimed to have been performing the required amounts and type of work to qualify as a woman owned small business when it knew that it was not doing so." *Id.* at 42. Further, Indian Eyes "knew that it was decertified as a HUBZone entity prior to the 2010 Census and withheld that information." *Id.*

Indian Eyes submitted monthly invoices to CH2M in order to receive payment for providing rental equipment and miscellaneous support, and CH2M included those invoices in its own requests for payment from the energy department. *Id.* at 62. But CH2M's monthly invoices were

> knowingly false because they included amounts for the subcontracts to . . . Indian Eyes, as the DEFENDANTS knowingly misrepresented . . . the HUBZone status of . . . Indian Eyes on those subcontracts, and because [CH2M] was in material noncompliance with the terms and conditions of the . . . Contract by:

> a. Knowingly misrepresenting . . . the HUBZone status of . . . Indian Eyes;
>
> b. Falsely claiming . . . HUBZone credit of . . . Indian Eyes; and/or
>
> c. Falsely claiming that it was complying in good faith with its Small Business Subcontracting Plan under the . . . Contract.

*Id.* at 65–66. Critically, "these [CH2M] monthly invoices from and including June 19, 2008 to July 22, 2014, were . . . *caused to be submitted by* . . . Indian Eyes." *Id.* at 66 (emphasis added).

As a result of CH2M's monthly invoices, the United States paid money under the contract that it otherwise would not have paid. *Id.* And thus, as a result of their conduct, Indian Eyes and Schescke received payments to which they were not entitled. *Id.* at 70. Specifically, such conduct prompted the energy department to mistakenly authorize and approve payments to Indian Eyes and Schescke through CH2M. *Id.* Each monthly invoice CH2M sent to the energy department constitutes "a separate false claim, for which each of the defendants is liable." *Id.* at 59.

Similarly, CH2M's other documents material to its monthly invoices— namely its request for consent to award subcontracts, its semiannual small business subcontract reports, its balanced scorecards, and its quarterly fee invoices— contained similar misrepresentations known to Indian Eyes and Schescke. *Id.* at 60–67. Nonetheless, Indian Eyes and Schescke caused those documents to be submitted to the energy department. *Id.* at 60, 63, 65–66. As a result of those documents, the

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 6

United States paid money under the contract that it otherwise would not have paid. *Id.* at 61, 64–65, 67.

In sum, the Third Amended Complaint alleges that, between at least June 19, 2008 and July 22, 2014, Indian Eyes and Schescke wrongfully "compet[ed] for, accept[ed], and receiv[ed] payments for, contracts set aside for competition and award to . . . HUBZone Businesses." *Id.* at 5; *see also id.* at 25–26, 66. This occurred because CH2M sent claims for payment to the energy department that knowingly misrepresented Indian Eyes' HUBZone status and withheld the fact of its decertification. *Id.* at 4, 48. This also occurred because Indian Eyes and Schescke "falsely certified their compliance with applicable Federal statutes, regulations, and contract provisions in order to receive payment from the United States and/or from [CH2M]." *Id.* at 59.

"Salina Savage has personal knowledge of the details of this scheme to submit false claims." *Id.* at 6. Further, "Salina Savage is the original source of the information upon which this action is based." *Id.* Upon these facts, the Third Amended Complaint's legal theory proceeds as follows:

> 10.2 The DEFENDANTS violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), by knowingly presenting and causing to be presented to the United States Department of Energy false and/or fraudulent claims for payment on the . . . HUBZone subcontracts issued to . . . Indian Eyes.
>
> . . . .

10.6 The DEFENDANTS violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a) (1) (B), by knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims for payment to the United States Department of Energy . . . .

10.7 . . . Pursuant to 31 U.S.C. 3729 (a) (1) (G) The DEFENDANTS are liable to the UNITED STATES for making, using, and causing to be used a false statement or record material to an obligation to pay or transmit money to the UNITED STATES and conceal, improperly avoid or decrease their obligations to pay or transmit money to the UNITED STATES.

*Id.* at 67–69.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, a complaint must "state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

To satisfy the heightened standard for pleading fraud claims, a complaint must "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (alteration in original) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). "[A]llegations of fraud 'must be specific enough to give defendants notice of the particular

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 8

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Broad allegations that include no particularized supporting detail do not suffice, but 'statements of the time, place and nature of the alleged fraudulent activities are sufficient.'" *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation omitted) (quoting *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). Naturally, "a fraud suit against differently situated defendants must 'identify the role of each defendant in the alleged fraudulent scheme.'" *Silingo*, 904 F.3d at 677 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)). But "a complaint need not distinguish between defendants that had the exact same role in a fraud." *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." A complaint is subject to dismissal under Rule 12(b)(6) if it either fails to allege a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists where a complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Id.* Plausibility does not require probability but demands more than a mere possibility of liability. *Id.* While a complaint need not contain detailed factual allegations, unadorned accusations of unlawful harm, naked assertions of wrongdoing, labels and conclusions, and formulaic or threadbare recitals of a cause of action's elements, supported only by mere conclusory statements, are not enough. *Id.*

In deciding a Rule 12(b)(6) motion, the Court construes a complaint in the light most favorable to the plaintiff and draws all reasonable inferences in his or her favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Thus, the Court must accept as true all factual allegations contained in a complaint. *Iqbal*, 556 U.S. at 678. But the Court may disregard legal conclusions couched as factual allegations. *See id.*

## DISCUSSION

**The Third Amended Complaint adequately states a claim upon which relief can be granted and also states with particularity the circumstances constituting fraud.**

Indian Eyes and Schescke argue the Court must dismiss Relators' complaint because it fails to state a claim upon which relief can be granted and fails to state with particularity the circumstances constituting fraud.

A person is liable under the Federal Claims Act if he or she

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> . . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . . .

31 U.S.C. § 3729(a)(1).

The False Claims Act's focus "remains on those who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016). Thus, "the essential elements of False Claims Act liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 783 (2019). Indian Eyes and Schescke argue Relators' complaint fails to adequately plead each of these four elements.

A claim is a request or demand for money that a person presents to the United States or its contractor, if such money is to be spent on the United States' behalf or

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 11

to advance its programs or interests and the United States either provides a portion of the money or reimburses its contractor therefor. § 3729(b)(2)(A).

In some circumstances, a person may be liable under the False Claims Act for making an "implied false certification." *Universal Health*, 136 S. Ct. at 1999. "When . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Id.* To adequately plead an implied false certification, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *Swoben*, 848 F.3d at 1180 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "The complaint also need not 'identify representative examples of false claims to support every allegation.'" *Id.* (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). "[I]t is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* (alteration in original) (quoting *Ebeid*, 616 F.3d at 998–99).

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health*, 136 S. Ct. at

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 12

2002. "The materiality standard is demanding." *Id.* at 2003. Information is material if it "ha[s] a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money." § 3729(b)(4). "Under any understanding of the concept, materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Universal Health*, 136 S. Ct. at 2002 (internal quotation marks and brackets omitted).

A person acts knowingly if he or she "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." § 3729(b)(1)(A). Showing a person acted knowingly "require[s] no proof of specific intent to defraud." § 3729(b)(1)(B).

"Under the False Claim Act's scienter requirement, 'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006)). Instead, this scienter requirement demands "'intentional, palpable lie[s],' made with 'knowledge of the falsity and with intent to deceive.'" *Campie*, 862 F.3d at 904 (alteration in original) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265, 1267 (9th Cir. 1996)).

Here, the complaint identifies the who, what, when, where, and how of the

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 13

misconduct charged as follows: Indian Eyes and Schescke (who) fraudulently misrepresented the entity's HUBZone status of Indian Eyes (what) between at least June 19, 2008 and July 22, 2014 (when) in claims for payment, and in records and statements material to those claims (where), that they submitted to CH2M for payment and caused to be submitted to the energy department for payment, and that the United States subsequently paid (how).

Because Schescke owns and controls Indian Eyes, a fair reading of the complaint attributes all of the latter's acts and omissions to the former. With this reading in mind, the complaint adequately alleges all essential elements of False Claims Act liability.

The complaint alleges Indian Eyes and Scheske made claims for payment by presenting requests for money to CH2M, a federal government contractor who then presented those requests to the energy department. The complaint alleges the United States granted those requests and paid Indian Eyes and Scheske through CH2M. And, the complaint permits a reasonable inference that such money was to be spent on the United States' behalf, or to advance its programs or interests, pursuant to the contract to continue environmental cleanup at the Hanford Site.

The complaint alleges Indian Eyes and Schescke premised these claims for payment on fraudulent misrepresentations. The complaint identifies how and why

the purportedly fraudulent statements and omissions are false, as follows:[4] Indian Eyes "knowingly misrepresented itself as a HUBZone contractor when it knew that it was not; and knowingly claimed to have been performing the required amounts and type of work to qualify as a woman owned small business when it knew that it was not doing so." ECF No. 206 at 42. Further, Indian Eyes "knew that it was decertified as a HUBZone entity prior to the 2010 Census and withheld that information." *Id.*

Additionally, the complaint links these misrepresentations to violations of statutory, regulatory, and contractual requirements on the part of CH2M as well as Indian Eyes and Schescke. It does so by alleging CH2M knowingly incorporated these misrepresentations into various documents, including claims for payment and records and statements material to those claims; such conduct placed CH2M in material noncompliance but, in connection with its claims for payment, CH2M nonetheless falsely stated it was in compliance; and Indian Eyes and Schescke caused those claims for payment to be submitted. Considering all, the complaint adequately alleges particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference those claims were actually submitted.

The complaint alleges these false claims were material to the United States'

---

[4] These are mere examples. Additional supporting facts are set forth fully in the Background section above.

ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT - 15

payment decision because, as a result of them, it in fact paid money under the contract that it otherwise would not have paid. In this way, the complaint properly looks to the effect the false claims had on the United States' likely or actual behavior and permits a reasonable inference that they had a natural tendency to influence its payment decision.

Finally, the complaint alleges Indian Eyes and Schescke made these false claims with scienter because they had actual knowledge that their misrepresentations were such. Additionally, the complaint permits a reasonable inference that Indian Eyes and Schescke acted in deliberate ignorance of or reckless disregard for the truth or falsity of the information at issue. Thus, the complaint is sufficient to establish intentional, palpable lies made with knowledge of the falsity and intent to deceive.

For these reasons, the complaint is specific enough to give Indian Eyes and Schescke notice of the particular misconduct alleged to constitute the fraud charged so they can defend against the charge and not just deny they have done anything wrong. It accomplishes this by stating the time, place, and nature of the alleged fraudulent activities. It adequately identifies each Defendant's role in the alleged fraudulent scheme, though it need not distinguish between Indian Eyes and Schescke because they had the exact same role in the fraud.

In sum, the complaint contains sufficient factual matter, accepted as true, to

state a facially plausible claim for relief. It does this by pleading facts permitting a reasonable inference that Indian Eyes and Schescke are liable under the False Claims Act. Thus, it alleges both a cognizable legal theory and sufficient facts to support that theory.

Construing the Third Amended Complaint in the light most favorable to Relators, and drawing all reasonable inferences in their favor, the Court concludes it adequately states a claim upon which relief can be granted and also states with particularity the circumstances constituting fraud.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Defendants Indian Eyes LLC and Roxie Schescke's motion to dismiss the Third Amended Complaint's allegations against them, **ECF No. 208**, is **DENIED**.

**2.** The motion hearing set for April 25, 2019, is **STRICKEN**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 24th day of April 2019.

SALVADOR MENDOZA, JR.
United States District Judge